[Cite as *State v. Hawthorne*, 2016-Ohio-203.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 102689

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**LONNIEL R. HAWTHORNE**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-590272-A

**BEFORE:** McCormack, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 21, 2016

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
17877 St. Clair Avenue
Suite 150
Cleveland, Ohio 44110


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Timsi Pathak
Gregory J. Ochocki
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Lonniel R. Hawthorne ("Hawthorne"), was asleep in his vehicle at a pump at a gas station around 3:00 a.m. with 98 bags of crack cocaine on his lap. A jury found him guilty of drug trafficking, drug possession, and possessing criminal tools. After a review of the record and applicable law, we affirm his convictions.

**Substantive Facts and Procedural History**

{¶2} Joe Jenkins was a gas station attendant working the night shift at Carnegie Gas on Carnegie Avenue in the city of Cleveland. On October 11, 2014, around 3:00 a.m., he noticed a vehicle at a pump that had not moved for over an hour. Because of the unusual circumstances, he called the police.

{¶3} Officers Eric Sands and Ken Conic arrived at the gas station to find the driver, Hawthorne, asleep behind the wheel, with the vehicle's engine running and lights on. The officers looked inside the vehicle and saw, to their surprise, a large bag of what appeared to be drugs on Hawthorne's lap in plain view. An open bottle of alcohol was on the passenger's seat.

{¶4} The officers' presence awakened Hawthorne, and he was quickly placed under arrest. Inside the large bag on his lap were 98 small baggies, each containing a rock of crack cocaine. A search of the vehicle also uncovered a bag of powder cocaine above the driver's visor, as well as a cell phone and $292 in cash in denominations of twenties, tens, and singles. The 98 individual rocks totaled 8.9 grams, and the powder cocaine weighed 2 grams.

{¶5} The state subsequently charged Hawthorne with drug trafficking involving between 10 and 20 grams of cocaine (Count 1), a third-degree felony; drug possession involving between 5 and 10 grams of cocaine (Count 2), a fourth-degree felony; and possessing criminal tools (Count 3), a fifth-degree felony. All three counts contained a forfeiture specification for

the money and cell phone.  Hawthorne pleaded not guilty, and the matter proceeded to a jury trial.

**{¶6}**  After the evidence was presented, the trial court instructed the jury on a lesser included offense of count one:   drug trafficking involving between five and ten grams of cocaine, a fourth-degree felony.

**{¶7}**  The jury found Hawthorne not guilty of drug trafficking between 10 and 20 grams of cocaine but guilty of the lesser included offense of trafficking between five and ten grams of cocaine.  The jury also found Hawthorne guilty of drug possession as indicted and possessing criminal tools, as well as the forfeiture specifications.  The court merged the trafficking and possession counts, and the state elected to proceed on the trafficking offense.  The court then imposed 18 months on the drug trafficking offense and 12 months on possessing criminal tools, to run consecutively.  The court, in addition, imposed 12 months for Hawthorne's violation of community control sanctions in a prior case, also to be served consecutively.  Hawthorne received a total prison term of 42 months.

**{¶8}** On appeal, Hawthorne assigns five errors for our review.  We address them out of order for ease of discussion.   The five assignments of error state:

    I.       The trial court erred in failing to reverse the conviction after forcing appellant to appear in court wearing jail clothes.

    II.      The trial court erred when it failed to reverse the sentence when defendant-appellant was punished twice for the same criminal activity.

    III.     The trial court erred in convicting defendant-appellant for possessing criminal tools when this conviction was not supported by sufficient evidence.

    IV.     The trial court erred in convincing defendant-appellant when conviction was against the manifest weight of the evidence.

V. The trial court erred when it permitted a state's witness to invade the province of the jury.

**Testimony of Matt Baeppler**

{¶9} We begin with the fifth assignment of error. Hawthorne argues that Sergeant Matt Baeppler improperly gave expert opinion testimony as to the ultimate issue of the case and therefore invaded the province of the jury.

{¶10} Sergeant Baeppler, a 20-year veteran in the Cleveland Police Department, had been involved in thousands of drug cases as a narcotics detective in the department's narcotics unit. He assisted in the investigation of the instant case. The state relied on Sergeant Baeppler's testimony to show, by way of circumstantial evidence, that Hawthorne was guilty of drug trafficking.

{¶11} Baeppler testified at length, based on his personal experience and observations, regarding how crack cocaine was typically packaged for sale to drug users. He explained that the amount of drugs in a suspect's possession is often indicative of whether the drugs were for sale or for personal use, due to the economics of the drug trade. In his opinion, the possession of 98 individually packaged rocks of crack cocaine showed that these drugs were for sale and it would be highly unlikely they were for personal use.

{¶12} Sergeant Baeppler was not presented as an expert witness, and we find his testimony proper under Evid.R. 701. Pursuant to Evid.R. 701 ("Opinion testimony by lay witnesses"),

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶13} Sergeant Baeppler's testimony fell within the scope of Evid.R. 701's requirement that a lay witness's opinion be rationally based on firsthand observations and personal knowledge and helpful in determining a fact in issue.

{¶14} Furthermore, the testimony was permissible under Evid.R. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."). Opinion testimony on an ultimate issue is admissible if it assists the trier of the fact. *State v. Irwin*, 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, ¶ 77, citing Staff Notes of Evid.R. 704.

{¶15} Specifically, it has been long settled that "police officers may testify to the nature and amount of drugs and its significance in drug trafficking." *State v. Young*, 8th Dist. Cuyahoga No. 92744, 2010-Ohio-3402, ¶ 19; *State v. Fellows*, 8th Dist. Cuyahoga No. 70900, 1997 Ohio App. LEXIS 2213 (May 22, 1997); *State v. Wilson*, 8th Dist. Cuyahoga No. 69751, 1996 Ohio App. LEXIS 4374 (Oct. 3, 1996); *State v. Crenshaw*, 8th Dist. Cuyahoga No. 60671, 1992 Ohio App. LEXIS 2831 (June 4, 1992). Sergeant Baeppler's opinion that the possession of 98 individually packaged rocks of crack cocaine was indicative of drug dealing was based on his experience and observation as a veteran narcotics investigator, and it aided the trier of fact in understanding the testimony presented by the state and in the determination of a fact in issue. As such, it was not improper under Evid.R. 704, even though it concerned the ultimate issue of whether the defendant was guilty of drug trafficking.

**Sufficiency and Manifest Weight**

{¶16}    This court's function on a review of the sufficiency of the evidence is:

to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in

a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶17} When a defendant asserts that his conviction is against the manifest weight of the evidence, the court,

"reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶18} Under the third assignment of error, Hawthorne claims his conviction of possessing criminal tools was not supported by sufficient evidence. He argues the money and cell phone found in proximity to the drugs did not establish the offense of possessing criminal tools. Under the fourth assignment of error, Hawthorne claims his conviction of drug trafficking and possessing criminal tools were against the manifest weight of the evidence. He argues that there was no evidence that any actual drug transaction was scheduled and that the presence of the drugs at best showed a possession of drugs for personal use.

{¶19} The gist of Hawthorne's argument is that the evidence against him for drug trafficking and possessing criminal tools is circumstantial only.

{¶20} Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. "[A]ll that is

required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶21} Here, the police found Hawthorne asleep behind the wheel at a gas station pump at around 4:00 a.m. with 98 individually wrapped rocks of crack cocaine on his lap. A cell phone and $292 in various denominations were also found on him, in addition to powdered cocaine uncovered from above the driver's side visor. It has long been established that otherwise innocuous objects such as bags, money, or cell phones can be used as criminal tools in drug trafficking and these items may constitute circumstantial evidence for drug trafficking. *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 60. *See also State v. Forte*, 8th Dist. Cuyahoga No. 99573, 2013-Ohio-5126, ¶ 10 (plastic baggies, digital scales, and large sums of money may be circumstantial evidence for drug trafficking); *State v. Harris*, 8th Dist. Cuyahoga No. 93758, 2010-Ohio-3423, ¶ 21 (a cell phone can be a criminal tool under circumstances that indicate they were intended for criminal use).

{¶22} In this case, 98 individual bags of crack cocaine were found in Hawthorne's lap, together with a cell phone and cash of $292 in various denominations. Sergeant Baeppler testified about cell phones and cash as tools of the drug trade. He testified the items found in this case were consistent with a lower-level drug dealer.

{¶23} The state produced sufficient evidence, albeit circumstantial, to support Hawthorne's conviction of possessing criminal tools. *See, e.g., State v. Alexander*, 8th Dist. Cuyahoga No. 90509, 2009-Ohio-597 ($544 in small denominations found in conjunction with

2.25 grams of crack cocaine satisfied the elements for a conviction of criminal tools); *Bowling, supra* (a cell phone and $250 found with five prepackaged bags of crack cocaine); *State v. Williams*, 8th Dist. Cuyahoga Nos. 92009 and 92010, 2009-Ohio-5553 (12 individual, prepackaged bags of marijuana and $340 in cash); *Fellows,* 8th Dist. Cuyahoga No. 70900 ($170 in tens and twenties and a pager found in conjunction with a bag of 11 rocks of cocaine); *State v. Tolbert*, 8th Dist. Cuyahoga No. 69158, 1996 Ohio App. LEXIS 1976 (May 16, 1996) ($460 and two pagers with 94 rocks of crack cocaine); *State v. Williams*, 8th Dist. Cuyahoga No. 63502, 1993 Ohio App. LEXIS 4237 (Sept. 2, 1993) ($278 in $20 bill denominations and a pager in conjunction with 188 rocks of crack cocaine). The third assignment of error lacks merit.

**{¶24}** As to Hawthorne's claim that his convictions of drug trafficking and possessing criminal tools were against the manifest weight of the evidence, after reviewing the record before us and weighing the evidence and all reasonable inferences, we cannot conclude that the jury in this case clearly lost its way and created such a manifest miscarriage of justice warranting a reversal of Hawthorne's convictions. The fourth assignment of error lacks merit as well.

**Jail Clothing**

**{¶25}** Under the first assignment of error, Hawthorne claims his convictions must be reversed because he was forced to appear in court wearing jail clothes.

**{¶26}** We recognize the potential for prejudice when a defendant appears before a jury in jail clothes. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). "The constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Holbrook v. Flynn*, 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). The United States Supreme Court, however, declined to create a strict rule requiring the reversal of all convictions in which the defendant appeared before the jury in prison

clothing. *Estelle* at 507-508. Our inquiry focuses on whether the accused's appearance before the jury in jail clothes was compelled. *Id*. at 507. Our review of the record does not support the contention that the defendant was compelled to stand trial in jail clothing.

{¶27} The transcript reflects that Hawthorne had over two months to secure regular clothing for his trial — he was notified in November 2014 that his trial was to commence at 8:00 a.m. on January 20, 2015. However, on the morning of the trial on January 20, 2015, before the voir dire was to begin, his counsel informed the trial court the defendant was still in his prison clothing and requested a continuance of one hour for the defendant to change his clothing. The trial court denied the request for a continuance, citing the defendant's own responsibility to be ready for the scheduled trial and noting his family's failure to bring the civilian clothing. The jury selection took place when Hawthorne was in jail clothing. During the lunch recess and before the state's opening argument, Hawthorne changed into civilian clothing.

{¶28} Because of the ample opportunity the defendant had in securing civilian clothing before trial, the record here does not show he was compelled to wear prison clothing to stand trial. *State v. Flowers*, 8th Dist. Cuyahoga No. 91864, 2009-Ohio-4876, ¶ 19 (defendant did not show he was compelled to stand trial in jail clothing where one month before the trial date, defendant's counsel asked defendant's parents to bring civilian clothes but they did not do so on the day of trial and they were told to bring the clothes the following day); *State v. Dorsey*, 8th Dist. Cuyahoga No. 72177, 1998 Ohio app. LEXIS 1727, *8 (Apr. 23, 1998) (defendant was not compelled to stand trial in prison clothing when the defendant had ample time before the trial date to have civilian clothes brought to him but did not make the effort).

**{¶29}** In any event, Hawthorne has not demonstrated how his brief appearance in prison attire during the jury selection prejudiced him. In *State v. Grissom*, 6th Dist. Erie No. E-99-029, 2000 Ohio App. LEXIS 4977 (Oct. 27, 2000), the defendant claimed that his appearance in jail clothing prejudiced him. The Sixth District observed that the jury did not convict appellant of all the charges against him, which indicated that the jury "carefully considered the evidence relating to the charges rather than making a blanket decision that appellant was guilty because he was dressed in jail clothing at trial." *Id*. at *8.

**{¶30}** Similarly here, the jury did not convict Hawthorne of all charges against him. He was charged with trafficking over 10 grams of cocaine, which included the 8.9 grams of individually packaged cocaine on his lap and two grams of cocaine over the driver's visor. The jury found, in Hawthorne's favor, that he was not guilty of trafficking over 10 grams of cocaine but guilty instead of the lesser included offense of trafficking over 5 grams of cocaine, which suggested that the jury carefully reviewed the evidence against him presented by the state. Hawthorne has not demonstrated his brief appearance in prison clothing before the trial commenced biased the jury against him. The first assignment of error lacks merit.

**Forfeiture**

**{¶31}** Under the second assignment of error, Hawthorne argues his conviction of possessing criminal tools and the forfeiture specifications constituted double jeopardy. This claim is without merit.

**{¶32}** R.C. Chapter 2981 governs forfeiture of property. Property subject to forfeiture includes contraband and instrumentalities involved in the commission of a felony. *See* R.C. 2981.01(B)(13), 2981.02(A)(1), 2981.02(A)(3)(a), and 2981.02(B). Criminal forfeiture is

initiated by including in the charging instrument a specification in compliance with R.C. 2941.1417. *State v. Recinos*, 5th Dist. Richland No. 14CA9, 2014-Ohio-3021, ¶ 21.

**{¶33}** Here, the state sought forfeiture of the cell phone and the cash by including a forfeiture specification in all three underlying counts, as permitted by R.C. 2941.1417.

**{¶34}** Hawthorne relies exclusively on *State v. Casalicchio*, 58 Ohio St.3d 178, 183, 569 N.E.2d 916 (1991), for his double jeopardy claim. *Casalicchio* has no application here. In *Casalicchio*, the state filed a motion for forfeiture of the defendant's automobile after the defendant was already convicted and sentenced for the underlying criminal offenses. The Supreme Court of Ohio set aside the forfeiture on double jeopardy grounds. The court explained that because the forfeiture of the defendant's automobile was an additional criminal penalty that the state failed to seek prior to sentencing, the forfeiture violated both the Ohio and the federal Constitutions. *Id*. at 183. *Casalicchio* does not apply to this case, because the state did not seek a new penalty after sentencing; rather, the forfeiture specifications were stated in Hawthorne's indictment. *See, e.g., State v. Hall*, 8th Dist. Cuyahoga No. 92952, 2010-Ohio-1665, ¶ 19; *State v. Bailey*, 8th Dist. Cuyahoga No. 81498, 2003-Ohio-1834, ¶ 72. The second assignment of error is overruled.

**{¶35}** Judgment affirmed.

**{¶36}** It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)


MARY EILEEN KILBANE, P.J., DISSENTING:

{¶37} I respectfully dissent. I would find that Hawthorne's constitutional rights were violated when he appeared before the jury in his jail clothes.

{¶38} This court has previously recognized that a defendant's constitutional right to a fair trial may be infringed by appearing before a jury in jail clothing. *State v. Cooper*, 8th Dist. Cuyahoga No. 99567, 2014-Ohio-817, ¶ 52, citing *Estelle*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. In *Estelle*, the United States Supreme Court found that the inquiry into whether a conviction should be overturned must focus on whether the accused's appearance before the jury in jail clothes was compelled. *Id.* at 507; *see also Dorsey*, 8th Dist. Cuyahoga No. 72177, 1998 Ohio App. LEXIS 1727. The court reasoned that the "focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments." *Estelle* at 508. The court stated:

> The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. *Drope v. Missouri*, 420 U.S. 162, 172 (1975). The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. Long ago this Court stated: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895).

* * *

> [C]ompelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial. Persons who can secure release are not subjected to this condition. To impose the condition on one category of defendants, over objection, would be repugnant to the concept of equal justice embodied in the Fourteenth Amendment. *Griffin v. Illinois*, 351 U.S. 12 (1956).

*Id.* at 503, 505-506.

{¶39} A review of the record in the instant case reveals that prior to voir dire, defense counsel requested a continuance to allow Hawthorne to change into his civilian clothes from his jail clothes. Defense counsel had Hawthorne's clothes in the back of the courtroom and requested one hour so the change of clothes could be facilitated. The trial court denied this request, noting that Hawthorne's family did not follow the procedures set forth by the sheriff for changing into street clothes for trial. Then during the lunch break, the court allowed Hawthorne to change into his civilian clothes. Subsequently, Hawthorne was in his civilian clothes for opening statements and the remainder of trial.

{¶40} It is clear from the record that Hawthorne did not voluntarily wear jail clothes as strategy or to elicit sympathy from the jury. Defense counsel objected to the trial court's denial of his continuance request, explaining that civilian clothes were immediately available for Hawthorne to change into. *Compare State v. Flowers*, 8th Dist. Cuyahoga No. 91864, 2009-Ohio-4876 (defendant was not forced to stand trial in jail clothes when trial counsel did not object to the fact that defendant was wearing jail clothes.); *Dorsey* (defendant was not forced to stand trial in jail clothes when the record demonstrated the trial court's willingness to have someone bring civilian clothes for the defendant and the defendant's comments revealed that he decided not to wear them because they were "messed up").

{¶41} While the court allowed Hawthorne to change into his civilian clothes during the lunch break, the prejudice to Hawthorne could not be undone. The jury had already observed him in his jail clothes, and Hawthorne exercised his constitutional right not to testify. Hawthorne's presumption of innocence was prejudiced by exposing the jury to Hawthorne first in his jail clothes and then later in his civilian clothes.

{¶42} Based on the foregoing, I would find that Hawthorne was compelled to wear jail clothing before the jury in violation of his constitutional right to a fair trial. As a result, I would sustain the first assignment of error.